United States District Court
Southern District of Texas
**ENTERED**
September 02, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **EHAB SADEEK,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CRIM. ACTION NO. 2:20-CR-00853** |
| | § | **CIVIL ACTION NO. 2:25-CV-00057** |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent.** | § | |

<u>**MEMORANDUM OPINON AND ORDER DENYING PETITIONER'S
MOTION UNDER 28 U.S.C. § 2255**</u>

Pending before the Court are Petitioner Ehab Sadeek's *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, (D.E. 98), and supplemental motion pursuant to 28 U.S.C. § 2255, (D.E. 103), to which the United States of America filed a memorandum in opposition, (D.E. 104), and Petitioner replied, (D.E. 105).[1] Petitioner has also filed an untimely Motion for Evidentiary Hearing on Uncontested Issues. (D.E. 106). For the reasons below, the Court **DENIES** Petitioner's Section 2255 motions, (D.E. 98); (D.E. 103), and **DENIES** his motion for an evidentiary hearing, (D.E. 106).

## I. Background

The Fifth Circuit summarized the facts giving rise to this case as follows:

Sadeek met K.B. online and began chatting through a messaging platform. K.B. advised Sadeek from the outset that she was 13 years old. Initially the messages were polite, but eventually Sadeek's messages became sexual in nature. He sent K.B. images of his penis and videos of him masturbating, professed his love for K.B., and told her that he was going to take her to Massachusetts where he lived and that he would visit her in Texas. K.B. gave him her address. Sadeek flew to Texas, rented a car, and went to her home.

When Sadeek arrived, K.B. led him to the backyard, near an old barn, and Sadeek began kissing and groping her as they were talking. K.B. kept trying to stop Sadeek, but he ultimately "bear hugged" her and forced her to perform oral sex, holding the back of her head with his hand so that she could not stop. Sadeek left in search of

---

[1] Docket entries refer to the criminal case, 2:20-cr-00853, *United States of America v. Sadeek.*

food, and when he came back the two ate behind the barn. He then again started kissing K.B., and despite her protests, he "pushed her against a wall" and began assaulting her. He left that night and slept at a hotel.

The next day Sadeek returned, and this time came into K.B.'s home. He brought food and clothes, including lingerie. After some pleading, he convinced K.B. to wear a dress he brought, then "threw K.B. on her bed so hard that it hurt her." He proceeded to rape K.B. multiple times. When she tried to pull away, he "grabbed her legs and pulled her towards him." K.B. suffered physical injures, which were confirmed during a hospital examination.

*United States v. Sadeek*, 77 F.4th 320, 323 (5th Cir. 2023).

Petitioner was arrested on the second day of his trip after someone reported his rental car as a suspicious vehicle parked down the street from K.B.'s house. (D.E. 58, p. 5, ¶ 6). Petitioner approached officers on foot from K.B.'s house and claimed he was helping the family move "some stuff." *Id.* K.B. told the officers she knew Petitioner and that he had touched her "private area" and they had engaged in sexual intercourse. *Id.* ¶ 6–7. Law enforcement took custody of two tablets belonging to K.B., and K.B.'s grandparents consented to a search. *Id.* at 6, ¶ 8. A search of one of the tablets revealed a Google Hangouts chat between K.B. and Petitioner that contained messages demonstrating that Petitioner had been grooming and enticing K.B. into sexual activity via the internet for approximately three weeks. *Id.* This chat also contained messages demonstrating that Petitioner had made plans to travel with intent to engage in illicit sexual conduct with K.B. *Id.*

Petitioner was charged with: (1) enticing a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (Count 1); (2) traveling with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b) (Count 2); and (3) transferring obscene materials to a minor, in violation of 18 U.S.C. § 1470 (Count 3). (D.E. 7, p. 1–4) (Indictment). Petitioner pled not guilty, waived his right to a jury trial, and proceeded to a bench trial based on facts he agreed to in a signed Stipulation of Certain Facts for the Purposes of Trial ("Stipulation"). (D.E. 37); *see also* (D.E. 38) (Waiver of Trial by Jury). The Court found Petitioner guilty on all three counts. (D.E.

40, p. 1).

In calculating Petitioner's sentence, the Second Amended Presentence Report ("PSR") applied a cross-reference from the guideline for enticement of a minor, U.S.S.G. § 2G1.3, to the guideline for criminal sexual abuse, U.S.S.G. § 2A3.1, and recommended the following enhancements: four levels under U.S.S.G. § 2A3.1(b)(1), because the offense involved conduct described in 18 U.S.C. § 2241(a) or (b); two levels under U.S.S.G. § 2A3.1(b)(2)(B), because the victim was 14 years old; and two levels under U.S.S.G. § 2A3.1(b)(6)(B), because the offense involved the use of a computer or interactive computer service to entice a minor to engage in prohibited sexual conduct or to facilitate transportation or travel by a participant to engage in prohibited sexual conduct. (D.E. 58, p. 13–15, ¶ 20–36). The PSR also applied a five-level enhancement under U.S.S.G. § 4B1.5(b)(1) because the offense was a covered sex crime and Petitioner engaged in a pattern of activity involving prohibited sexual conduct. *Id.* at 15, ¶ 41. After a multiple-count adjustment and credit for acceptance of responsibility, the PSR calculated Petitioner's total offense level at 41. *Id.* at 15–16, ¶ 37–44. With a criminal history category of I, Petitioner's advisory Guideline range was 324–405 months' imprisonment and between five years and a lifetime term of supervised release. (D.E. 60, p. 1).

Petitioner's counsel filed written objections to (1) the PSR's factual assertions that detailed the force he used against K.B. on the grounds that they were not sufficiently reliable; (2) the application of the cross-reference from U.S.S.G. § 2G1.3 to U.S.S.G. § 2A3.1, which was based on Petitioner's use of force against K.B.; (3) how the PSR grouped the counts of conviction under the Guidelines; and (4) the five-level enhancement under U.S.S.G. § 4B1.5(b). (D.E. 45); (D.E. 55).

At Petitioner's sentencing hearing, defense counsel reiterated his written objections, which

the Court overruled. (D.E. 80, p. 7–13). The Court also overruled the Government's objection to the base offense level. *Id.* at 17. To explain how Petitioner's conduct likely affected K.B., the Government called Dometrio Rosales, an expert witness in the field of psychotherapy with a focus on child trauma. *Id.* at 18–20, 24. The Government also offered victim impact statements from K.B. and her grandparents. *Id.* at 56–61. Petitioner called attorney Neil Tassel, who had represented him in criminal matters in Boston several years prior. *Id.* at 67–71. Petitioner also spoke on his own behalf. *Id.* at 87–104.

The Court adopted the PSR without change and sentenced Petitioner within the Guidelines range to 405 months on each of Counts 1 and 2 and 120 months in Count 3, to run concurrently and to be followed by a lifetime term of supervise release. *Id.* at 109–10. The Court orally ordered the payment of full restitution in an amount to be determined, *id.* at 110, 113, and subsequently ordered restitution in the amount of $42,153.83. (D.E. 71, p. 6). The Court also imposed a $5,000 special assessment as to each count under the Justice for Victims of Trafficking Act of 2015 (JVTA), for a total of $15,000. *Id.*

On appeal, Petitioner raised three challenges to his sentence: (1) the application of the cross-reference to U.S.S.G. § 2A3.1 based on a finding that he engaged in sexual acts by using force or placing the victim in fear; (2) the enhancement under U.S.S.G. § 4B1.5(b)(1) for engaging in a pattern of prohibited sexual conduct; and (3) the imposition of a $5,000 JVTA assessment for his conviction for the transfer of obscene materials to a minor (Count 3). *Sadeek*, 77 F.4th at 323. The Fifth Circuit vacated this Court's judgment as to the assessment on Count 3 and affirmed the remainder of the judgment as to Petitioner's conviction and sentence. *Id.* at 327.

The Supreme Court denied Petitioner's petition for writ of certiorari on February 20, 2024. *Sadeek v. United States*, 144 S. Ct. 829 (2024) (Mem. Op.). Petitioner filed the current motion

under 28 U.S.C. § 2255 on February 15, 2025. It is timely. *See* 28 U.S.C. § 2255(f)(1).

## II. Petitioner's Allegations

Petitioner's Section 2255 motion raises the following grounds for relief:

(1) "Denial of Due Process – Stipulation Agreement was not a knowing, intelligent choice," (D.E. 98, p. 10);

(2) "Ineffective Assistance of Trial Counsel, Stipulation Agreement," *id.* at 14;

(3) "Violation of Confrontation Clause – Expert Witness," *id.*;

(4) "Denial of Due Process at sentencing – Conflict between oral pronouncement of sentence and written judgment," *id.* at 16;

(5) "PSR Writer Operated under a Direct Conflict of Interest," *id.* at 21;

(6) "Ineffective Assistance of Appellate Counsel," *id.* at 24;

(7) "18 U.S.C. § 2422(b) is Constitutionally Vague," *id.* at 28;

(8) "Illegal Search and Seizure in Violation of the Fourth Amendment," *id.* at 30; and

(9) "Restitution based solely on judge found facts violates Due Process," *id.* at 32.[2]

The Government moves to dismiss Petitioner's claims as procedurally defaulted, not cognizable on collateral review, conclusory, or otherwise meritless. (D.E. 104, p. 1).

## III. Legal Standards

### A. 28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28

---

[2] Petitioner's Section 2255 motion mistakenly begins numbering with page one on what is actually page two, causing all subsequent page numbers to be inaccurate. All page references herein correspond to the CM/ECF pagination, not Petitioner's internal numbering.

U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

### B. Ineffective Assistance of Counsel

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial. *Id.* This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689–90. With regard to the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an

insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

Persons convicted of a crime also are entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985). An appellate counsel's performance is reviewed under the *Strickland* standards. *See Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998). Effective assistance of appellate counsel does not mean that counsel will raise every available non-frivolous ground for appeal. *Evitts*, 469 U.S. at 394; *West v. Johnson*, 92 F.3d 1385, 1396 (5th Cir. 1996). Nor will counsel be deficient for failing to press a frivolous point. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *Evitts*, 469 U.S. at 394.

## IV. Analysis

### A. Denial of Due Process – Stipulation Agreement was not a knowing, intelligent choice

Petitioner argues in Ground One of his motion that the Government breached their "contractual agreement" at sentencing "by the introduction of additional alleged criminal acts not disclosed or included as part of the final stipulation agreement," which "resulted in Mr. Sadeek receiving a much longer sentence based solely on these alleged additional facts." (D.E. 98, p. 12–13). Petitioner states that he has always maintained that he never had sexual intercourse with K.B. or used force against her, and he rejected prior drafts of the Stipulation that included such facts. *Id.* He claims the Government's "bait and switch" by nonetheless including these facts at sentencing violated his due process rights and rendered his agreement to the Stipulation unknowing and involuntary. *Id.*

The record belies Petitioner's claim that his decision to enter into an agreement with the Government was unknowing and involuntary. Petitioner affirmed under oath that he voluntarily

waived his right to a jury trial and agreed to have a stipulated bench trail. (D.E. 74, p. 4–5). He

also stated that he had fully discussed the waiver with his trial counsel and authorized counsel to

sign both the Stipulation and the Waiver of Trial by Jury form on his behalf. *Id.* at 5. The signed

Stipulation affirmed that Petitioner "thoroughly reviewed, understand[s], and agree[s] that the

information contained in this Stipulation of Fact [is] true and correct, and that this stipulation can

and will be presented without modification during a stipulated bench trial." (D.E. 37, p. 8).

Petitioner's sworn statements in open court are entitled to a strong presumption of truthfulness.

*See United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001) (citing *Blackledge v. Allison*,

431 U.S. 63, 74 (1977)). Signed court documents are also "accorded great evidentiary weight."

*United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994); *Bonvillain v. Blackburn*, 780 F.2d 1248,

1252 (5th Cir. 1986).

Moreover, the Government did not breach any "contractual agreement" with Petitioner.

The Stipulation merely formalized the parties' agreement that, if the case were to proceed to trial,

the Government would call witnesses and otherwise present evidence of specific facts establishing

guilt. (D.E. 37, p. 3). The Stipulation did not restrict the scope of conduct that could be considered

in the PSR, nor did it impose any obligations on the Government or the Court with respect to

sentencing. *See id.* Moreover, the Sentencing Guidelines allow for the inclusion of a broad range

of relevant conduct. *See* U.S.S.G. § 1B1.3(a)(1) (defining relevant conduct as including "all acts

and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully

caused by the defendant," as well as "all harm that resulted from the acts and omissions . . . and

all harm that was the object of such acts and omissions"). This is true even if the defendant was

not formally charged or convicted of that conduct. *United States v. Solis*, 299 F.3d 420, 461–62

(5th Cir. 2002) ("To count as relevant conduct under the guidelines, 'it is not necessary for the

defendant to have been charged with or convicted of carrying out the other acts before they can be considered relevant conduct,' although 'the conduct must be criminal.'" (quoting *United States v. Anderson*, 174 F.3d 515, 526 (5th Cir. 1999))).

Accordingly, the Court **DENIES** Petitioner's claim in Ground One.

### B. Ineffective Assistance of Trial Counsel, Stipulation Agreement

In a related claim, Petitioner alleges in Ground Two that his counsel "rendered ineffective assistance of counsel for all of the above stated reasons with regard" to Ground One. (D.E. 98, p. 14). The Court construes this claim to allege that counsel was ineffective for advising Petitioner to agree to a bench trial on stipulated facts and failing to object to relevant conduct in the PSR.

During the bench trial, defense counsel explained why Petitioner proceeded as he did:

> The purpose is two-fold for Mr. Sadeek. One is that Mr. Sadeek has decided to do a bench trial in order to accept responsibility for his conduct in this case. . . .The second reason for this bench trial is Mr. Sadeek recognizes that it's very likely that he will eventually be returned to Egypt, his home country. Mr. Sadeek believes that there's a possibility that he could actually be retried for this case when he's returned to Egypt. And he believes that there being a verdict of guilty rather than an admission of guilt, could benefit him from essentially being persecuted and retried again in Egypt.

(D.E. 74, p. 9–10).

Defense counsel also objected to the PSR on the basis that there was insufficient evidence for certain factual allegations contained therein:

> (1) that Mr. Sadeek engaged in violent, forceful, coercive or painful sexual activity with KB, (2) that KB was a reluctant, if not involuntary, participant in the sexual activity and that KB attempted, albeit unsuccessfully, to thwart Mr. Sadeek's sexual advances, (3) that Mr. Sadeek overbore KB's will through repeated, pressured pleadings and (4) as a result, KB suffered severe psychological distress prior to being discovered by police.

(D.E. 55, p. 4).

Petitioner has failed to establish either deficient performance or actual prejudice

under *Strickland*, and habeas relief is not warranted on these issues. Accordingly, the Court **DENIES** his claim in Ground Two.

### C.  Violation of Confrontation Clause – Expert Witness

Petitioner complains in Ground Three that the Government called a "non-certified expert"—Demetrio Rosales—to provide hearsay opinion testimony accusing Petitioner of rape based on Mr. Rosales' review of video interviews of K.B. conducted by another therapist. (D.E. 98, p. 14–16). According to Petitioner, this evidence violated both the Confrontation Clause and Federal Rule of Evidence 702. *Id.*

This claim is procedurally defaulted because Petitioner has not shown cause for his failure to raise it on direct appeal and has not established actual prejudice, as his claim is meritless. *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) ("[R]eview of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice.").

"The Federal Rules of Evidence do not apply at sentencing." *United States v. Martinez*, 2021 WL 5409248, at *1 (5th Cir. Nov. 18, 2021) (unpublished) (citing Fed. R. Evid. 1101(d)(3) and rejecting defendant's claim "that the expert testimony allegedly did not comply with Federal Rules of Evidence 702 and 703"). Thus, "in making its findings, the district court may consider any information which bears 'sufficient indicia of reliability to support its probable accuracy,' including hearsay evidence, without regard to admissibility under the Federal Rules of Evidence which govern at trial." *Solis*, 299 F.3d at 455 (quoting *United States v. Huskey*, 137 F.3d 283, 291 (5th Cir. 1998)); *United States v. Smith,* 13 F.3d 860, 863 n.5 (5th Cir. 1994)); *see also United States v. Young*, 981 F.2d 180, 187 (5th Cir. 1992) ("Hearsay is admissible for sentencing purposes

. . . ."). The Confrontation Clause similarly does not apply at sentencing hearings. *United States v. Dinh*, 920 F.3d 307, 310 (5th Cir. 2019); *United States v. Beydoun*, 469 F.3d 102, 108 (5th Cir. 2006) (collecting cases).

Accordingly, the Court **DENIES** Petitioner's claim in Ground Three.

### D. Denial of Due Process at Sentencing – Conflict between Oral Pronouncement of Sentence and Written Judgment

Petitioner argues in Ground Four that the Court violated his due process rights when it failed to orally pronounce his conditions of supervision at sentencing, thus depriving him of the opportunity to object. (D.E. 98, p. 16). He moves the Court to "amend the written judgment and remove the standard conditions [of supervision] to conform to the oral pronouncement of sentence." *Id.* at 20.

This claim is procedurally defaulted because Petitioner has not shown cause for his failure to raise it on direct appeal and has not established actual prejudice, as his claim is meritless. *See Cervantes*, 132 F.3d at 1109. While Courts must orally pronounce a defendant's sentence, they need not pronounce every term. *See United States v. Torres-Aguilar*, 352 F.3d 934, 936 (5th Cir. 2003) (per curiam). Courts are only required to orally pronounce discretionary conditions of supervision—not conditions that are mandatory under the supervised release statute—because courts have no power to modify a mandatory term in response to a defendant's objection. *See id.* at 936–38; *United States v. Diggles*, 957 F.3d 551, 559 (5th Cir. 2020) (citing 18 U.S.C. § 3583(d)). The Fifth Circuit has held that "[o]ral in-court adoption of a written list of proposed conditions" contained in the PSR provides the necessary notice of the defendant's sentence. *Diggles*, 957 F.3d at 560. "When the defendant confirms review of the PSR and sentencing goes forward, a court's oral adoption of PSR-recommended conditions gives the defendant an opportunity to object." *Id.* (citing *United States v. Bloch*, 825 F.3d 862, 872 (7th Cir. 2016) (rejecting a pronouncement

challenge to this procedure because the key concern is whether the defendant had an opportunity to object at sentencing)).

Here, the PSR described in detail several discretionary conditions of supervision recommended by Probation. (D.E. 58, p. 28–29). Petitioner affirmed under oath at sentencing that he "had a chance to review the latest presentence report in [his] case" and was "able to discuss it with [his] attorney." (D.E. 80, p. 7). The Court adopted the PSR's recommended conditions and ordered that Petitioner's sentence would be followed by a lifetime of supervised release:

> In addition to the mandatory and standards conditions, immigration related requirements, sex offender treatment, victim contact prohibition, sex offender children prohibition, sex offender children prohibition concerning cohabitation, the computer restriction, as set out in the addendum to the PSR, will be ordered.

*Id.* at 110.

Because Petitioner had notice of his conditions of supervision and the opportunity to object, this claim fails. *See Diggles*, 957 F.3d at 560.

There is also no merit to Petitioner's assertion that the "imposition of supervised released as part of the sentence creates an unconstitutional violation of the Separation of Powers" because (1) the Court may not both order and carry out a sentence of supervision; (2) the "federal judiciary has no statutory authority once a sentence has been imposed;" and (3) courts have no jurisdiction to reduce or modify a defendant's sentence once imposed. (D.E. 98, p. 20). Congress explicitly delegated to sentencing courts the authority to "include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment." 18 U.S.C. § 3583(a). Congress also delegated to sentencing courts the authority to modify a defendant's term of imprisonment under certain circumstances, 18 U.S.C. § 3582(c), and to modify, terminate, extend, or revoke a defendant's term of supervision after considering certain factors, 18 U.S.C. § 3583(e).

Accordingly, the Court **DENIES** Petitioner's claim in Ground Four.

### E. PSR Writer Operated under a Direct Conflict of Interest

Petitioner claims in Ground Five that the Probation Officer who drafted the PSR violated his duty to "conduct an independent and impartial presentence investigation" and "acted as an advocate for the government in order to convince the court that Mr. Sadeek did in-fact engage in uncharged and unadmitted criminal conduct" not agreed to in the Stipulation. (D.E. 98, p. 21–22) (emphasis omitted). He also complains that the Probation Officer wrongfully "advocated for a higher sentence based on the use of an out-of-circuit case not used by the government to justify his non-independent, biased opinion." *Id.* at 22.

This claim is procedurally defaulted because Petitioner has not shown cause for his failure to raise it on direct appeal and has not established actual prejudice, as his claim is meritless. *See Cervantes*, 132 F.3d at 1109. As the Court previously explained, relevant conduct for sentencing purposes was not limited to facts contained in the Stipulation. *See* Part IV.A, *supra*. The Probation Officer also did not violate Petitioner's due process rights at the sentencing hearing by directing the Court to *United States v. Telles*, 18 F.4th 290, 303 (9th Cir. 2021), after the Court explicitly requested "caselaw that would help the Court in seeing that 4B1.5(b) is applicable in this case." (D.E. 80, p. 12).

Petitioner's conclusory allegation that "defense counsel rendered ineffective assistance resulting in actual prejudice" is similarly without merit. (D.E. 98, p. 24). "[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue" under Section 2255. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). To the contrary, a petitioner alleging ineffective assistance of counsel "must identify specific acts or omissions; general statements and conclusory charges will not suffice." *Knighton v. Maggio*, 740 F.2d 1344, 1349–50 (5th Cir. 1984). Moreover, the record shows that defense counsel objected to the enhancement under U.S.S.G. §

4B1.5(b) and requested the opportunity to review the caselaw offered by the Probation Officer, but his objection was overruled. (D.E. 80, p. 13); *see also* (D.E. 55, p. 19–22). Petitioner also cannot show prejudice, as his claim that the Court erred in applying the section 4B1.5(b) enhancement was denied on appeal. *See Sadeek*, 77 F.4th at 326–27.

Accordingly, the Court **DENIES** Petitioner's claim in Ground Five.

### F.  Ineffective Assistance of Appellate Counsel

Petitioner argues in Ground Six that his appellate counsel was ineffective for (1) failing to cite *Wooden v. United States*, 595 U.S. 360 (2022), in support of his claim that U.S.S.G. § 4B1.5(b)(1) does not apply; (2) failing to file a reply brief; (3) failing to object to the Fifth Circuit's decision to cancel oral argument; and (4) failing to raise "a preserved plain error issue" concerning grouping. (D.E. 98, p. 24–28).

#### *1.  Failure to cite Wooden*

U.S.S.G. § 4B1.5(b)(1) provides for a five-level enhancement where the "defendant's instant offense of conviction is a covered sex crime . . . and the defendant engaged in a pattern of activity involving prohibited sexual conduct." U.S.S.G. § 4B1.5(b)(1). The commentary to this Guideline explains that "the defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." *Id.*, cmt. n.4(B)(i). "An occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion." *Id.*, cmt. n.4(B)(ii). In dismissing Petitioner's claim that section 4B1.5(b)(1) should not apply, the Fifth Circuit recognized that "[t]his court has not addressed the meaning of 'separate occasions' in the context of § 4B1.5(b)(1)." *Sadeek*, 77 F.4th at 326. However, other circuits have

"concluded that the enhancement applies in cases where the prohibited activity occurred on consecutive days, so long as there were at least two separate instances of prohibited conduct." *Id.* at 326–27 (collecting cases).

Petitioner has not shown that his appellate counsel was ineffective for failing to cite *Wooden v. United States*, which, as the Government correctly points out, "does not directly control the application of [§ 4B1.5(b)(1)] and does not even necessarily support [Petitioner's] claim." (D.E. 104, p. 26). *Wooden* interpreted the meaning of "occasions different from one another" in the context of the Armed Career Criminal Act—not U.S.S.G. § 4B1.5(b)(1)—and held that Wooden's ten burglaries, committed during one continuous event, in a single building, on a single evening, did not take place on separate "occasions." *Wooden*, 595 U.S. at 362. The Government's appellate brief distinguished *Wooden*, noting that "the *Wooden* Court recognized that offenses committed 'a day or more apart, or at a significant distance' are correctly treated 'as occurring on separate occasions.'" Brief of Plaintiff-Appellee at 27 n.7, *Sadeek*, 77 F.4th 320, No. 22-40332 2023 WL 1554276, at *27 n.7 (quoting *Wooden,* 595 U.S. at 69–71). Moreover, Petitioner cannot establish prejudice because the Fifth Circuit was aware of *Wooden* when deciding his appeal, as it was cited in the Government's brief.

### 2. *Failure to file reply brief*

Petitioner next complains that his appellate counsel failed to file a reply brief, but he does not address what arguments counsel should have raised. This conclusory allegation is insufficient to establish deficient performance. *See Pineda*, 988 F.2d at 23; *Knighton*, 740 F.2d at 1349–50. Petitioner also has not established prejudice because he has not explained how a reply brief would have altered the outcome of his case.

### 3. *Failure to object when oral argument was canceled*

Petitioner also alleges that appellate counsel was ineffective for failing to object to the Fifth Circuit's decision to cancel oral argument.

The Fifth Circuit possesses the authority and discretion to control its own calendar, including whether to hold oral argument in a case. *See* Fed. R. App. P. 34(a)(2) (permitting a circuit court to decline to hold oral argument if "a panel of three judges who have examined the briefs and record unanimously agrees that oral argument is unnecessary."); 5th Cir. R. 28.2.3 (requiring each party's brief to include "a short statement why oral argument would be helpful" which the court will give "due, though not controlling, weight in determining whether to hold oral argument"); 5th Cir. R. 34.2 ("Cases not set for oral argument are placed on the summary calendar for decision. The clerk will calendar the oral argument cases based upon the court's calendaring priorities."). Petitioner has cited no rule or procedure that would have allowed his appellate counsel to object to the Fifth Circuit's decision not to hold oral argument. He also has not established prejudice because he has not explained how oral argument would have altered the outcome of his case.

### 4.    *Failure to raise grouping claim*

Finally, Petitioner complains that appellate counsel was ineffective for failing to argue that Petitioner's offense level was improperly increased by one level for "grouping" of offenses.

Defense counsel's written objections to the PSR argued that all three counts should have been grouped together pursuant to U.S.S.G. § 3D1.2(b). (D.E. 55, p.15). Probation responded that Count 1 should not be grouped with Counts 2 and 3 because "the conduct on the same victim on different occasions involved multiple, separate instances of fear and risk of harm, not one composite harm." (D.E. 59, p. 3). The Court agreed and overruled the objection at sentencing. (D.E. 80, p. 13). Movant cannot establish prejudice because such a claim would not have been

meritorious on appeal. Moreover, what issues appellate counsel chooses to raise are "strategic choices" and "are virtually unchallengeable." *See Neal v. Vannoy*, 78 F.4th 775, 790 (5th Cir. 2023) (citing *Strickland*, 466 U.S. at 690).

In sum, Petitioner has failed to show that appellate counsel's performance was deficient or that, but for counsel's performance, Petitioner would have prevailed on appeal. Accordingly, the Court **DENIES** Petitioner's claims in Ground Six.

### G. 18 U.S.C. § 2422(b) is Constitutionally Vague

Petitioner argues in Ground Seven that 18 U.S.C. § 2422(b)—which criminalizes the use of the internet or any means of interstate or foreign communication to knowingly persuade, induce, entice, or coerce a minor to engage in prostitution or any other illegal sexual activity—is unconstitutionally vague because "the term 'sexual activity' is not defined in the federal criminal code." (D.E. 98, p. 28).

This claim is procedurally defaulted because Petitioner has not shown cause for his failure to raise it on direct appeal and has not established actual prejudice, as his claim is meritless. *See Cervantes*, 132 F.3d at 1109. The Fifth Circuit has previously rejected the claim that 18 U.S.C. § 2422(b) is unconstitutionally vague. *United States v. Howard*, 766 F.3d 414, 430 (5th Cir. 2014) (collecting cases and rejecting defendant's vagueness and overbreadth challenges "in light of the unanimous persuasive authority upholding the constitutionality of § 2422(b)"); *see also United States v. Lucio*, No. 2:18-cr-167, 2025 WL 438569, at *6 (S.D. Tex. Feb. 7, 2025) (Ramos, J.) ("Movant cites no authority that has held 18 U.S.C. § 2422(b) to be unconstitutional, and the Court can find none. Rather, courts have consistently held that § 2422(b) is constitutional on due process and other grounds.") (collecting cases); *United States v. Shannon*, No. 3:22-cr-10, 2023 WL 1457511, at *7 (N.D. Miss. Feb. 1, 2023) (Brown, J.) (rejecting vagueness argument because the

"indictment specifically lists the statutes under which Shannon 'could be charged with a criminal offense' in each of the challenged counts" and "reference to the state statutes informs Shannon of the alleged 'sexual activity' for which he 'could be charged.'" (citation omitted)); *Peterson v. United States*, No. 1:19-cr-0020-P, 2022 WL 5241756, at *2 (N.D. Tex. Oct. 6, 2022) (Pittman, J.) (dismissing petitioner's claim "that § 2422(b) is both overbroad and vague" because "these arguments have been rejected by the Fifth Circuit").

Accordingly, the Court **DENIES** Petitioner's claim in Ground Seven.

### H.  Illegal Search and Seizure in Violation of the Fourth Amendment

Petitioner argues in Ground Eight that law enforcement violated the Fourth Amendment by speaking with K.B. and examining the contents of her cellphone, tablet, and computer, and that, absent this unlawful search and seizure, there was no probable cause for his arrest. (D.E. 98, p. 32).

"Fourth Amendment claims are not cognizable in § 2255 proceedings because they can be brought at the trial court level." *Lynch v. United States*, No. 4:20-cr-0223, 2023 WL 3741646, at *2 (S.D. Tex. Apr. 3, 2023) (Bryan, Mag. J.), *adopted*, No. 4:20-cr-00223, 2023 WL 3740320 (S.D. Tex. May 31, 2023) (Eskridge, J.), (citing *United States v. Ishmael*, 343 F.3d 741, 742 (5th Cir. 2003) ("We do not reach the merits of Ishmael's § 2255 petition because we hold that he had a full and fair opportunity to litigate his Fourth Amendment claim in pre-trial proceedings and on direct appeal.")); *see also United States v. Garcia*, 724 F. App'x 348, 349 (5th Cir. 2018) ("Because Garcia 'had a full and fair opportunity to litigate his Fourth Amendment claim in pre-trial proceedings and on direct appeal,' *Stone v. Powell*, 428 U.S. 465, 494–95 (1976), bars collateral review of that claim.").

Accordingly, the Court **DENIES** Petitioner's claim in Ground Eight.

### I.  Restitution based solely on judge found facts violates Due Process

Finally, Petitioner claims in Ground Nine that the Court erred by relying on facts that were not established at the bench trial or agreed to in the Stipulation when it ordered restitution. (D.E. 98, p. 32). Petitioner further alleges that his trial counsel was ineffective for failing to inform him, prior to the bench trial, "that he would be subject to a specific restitution penalty." *Id.* at 34.

Like his Fourth Amendment claim, Petitioner's challenge to restitution is not cognizable in a Section 2255 motion. *See Campbell v. United States*, 330 Fed. App'x 482 (5th Cir. 2009) ("A district court lacks jurisdiction to modify a restitution order under § 2255."); *United States v. Hatten*, 167 F.3d 884, 887 (5th Cir. 1999) ("[W]e make plain today that complaints concerning restitution may not be addressed in § 2255 proceedings."). This also applies to ineffective assistance of counsel claims based on an allegedly improper restitution order. *United States v. Walker*, 78 F.3d 582, 1996 WL 60750, at *3 (5th Cir. 1996) (finding that the defendant's "challenge to the ordered restitution and accompanying claim of ineffective assistance of counsel do not pertain to unlawful custody and, accordingly, fall outside the scope of section 2255"); *United States v. Segler*, 37 F.3d 1131, 1137 (5th Cir. 1994) ("[I]f [an ineffective assistance of counsel claim] relates only to the imposition of a fine, [that] claim falls outside § 2255."); *United States v. Cunningham*, No. H-10-609, 2013 WL 3899335, at *7 (S.D. Tex. July 27, 2013) (Werlein Jr., J.) ("As for her ineffectiveness claim as it relates to the order of restitution, such a claim is not cognizable in a § 2255 proceeding such as this.").

Accordingly, the Court **DENIES** Petitioner's claim in Ground Nine.

The Court further **DENIES** Petitioner's request to hold this claim in abeyance pending the Supreme Court's decision in *Ellingburg v. United States*, 145 S. Ct. 1899, No. 24-482, 2025 WL 1020364 (Apr. 7, 2025) (granting cert.), and to permit supplemental briefing after the Supreme

Court issues its decision. (D.E. 103, p. 2).[3]

### V. Motion for Evidentiary Hearing

On June 11, 2023, Petitioner timely replied to the Government's response to his Section 2255 motion, as provided for in the Court's Briefing Order, (D.E. 99), and Rule 5(d) of the of the Rules Governing Section 2255 Proceedings for the United States District Courts ("§ 2255 Rules"). Two months later, Petitioner filed a Motion for Evidentiary Hearing on Uncontested Issues. (D.E. 106). The "uncontested" issues identified by Petitioner include:

> (1) Breach of the stipulation agreement;
>
> (2) Fourth Amendment violations and ineffective assistance of counsel (IAC);
>
> (3) IAC related to the Presentence-Report (PSR) writer's unsolicited advocacy; and
>
> (4) IAC and Confrontation Clause violation involving expert testimony.

*Id.* at 1.[4]

An evidentiary hearing is only necessary when the Court cannot decide the motion based upon the pleadings and the record. *See* Rule 8(a), § 2255 Rules. Here, Petitioner's Section 2255 motion does not raise fact questions that cannot be resolved based on the record before this Court, and the pleadings and the record conclusively demonstrate that he is not entitled to relief. The Court therefore **DENIES** Petitioner's Motion for Evidentiary Hearing on Uncontested Issues. (D.E. 106).

---

[3] Following his release from prison for robbery, Ellington filed a motion to show cause in the district court, challenging the continued enforcement of his restitution order, which was issued under the Victim and Witness Protection Act (VWPA). *United States v. Ellingburg*, 113 F.4th 839 (8th Cir. 2024), *cert. granted sub nom. Ellingburg v. United States*, 145 S. Ct. 1899 (Apr. 7, 2025). The district court held that retroactively applying the Mandatory Victim Restitution Act (MVRA)—which superseded the VWPA and expanded the restitution liability term—to Ellington's restitution order did not violate the Ex Post Facto Clause. *Id.* Ellington appealed, and the Eighth Circuit affirmed. *Id.* The Supreme Court will address a circuit split on whether restitution under the MVRA is a criminal punishment for purposes of the Ex Post Facto Clause.

[4] The Court notes that Petitioner did not allege ineffective assistance of counsel with respect to his Confrontation Clause claim in Ground Three or his Fourth Amendment claim in Ground Eight.

## VI. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a Section 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84). As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Petitioner is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI. Conclusion

For the foregoing reasons, the Court **DENIES** Petitioner's motions to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, (D.E. 98; D.E. 103), **DENIES** Petitioner's Motion for Evidentiary Hearing on Uncontested Issues, (D.E. 106), and **DENIES** a Certificate of Appealability.

SO ORDERED.

DAVID S. MORALES
UNITED STATES DISTRICT JUDGE

Signed: Corpus Christi, Texas
September 2, 2025